## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
ZIMMER BIOMET                           )
HOLDINGS, INC.,                         )
                                        )
            Plaintiff,                  )
                                        )
        v.                              )          Civil Action No. 22-2966 (ABJ)
                                        )
INTERNAL REVENUE                        )
SERVICE,                                )
                                        )
            Defendant.                  )
_____)

## <u>MEMORANDUM OPINION AND ORDER</u>

In this case brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et*

*seq.*, plaintiff Zimmer Biomet Holdings, Inc. ("Zimmer") has filed a complaint against defendant

Internal Revenue Service ("IRS"), a government agency.  *See* Compl. ¶¶ 3–4 [Dkt. # 1].  Zimmer

seeks an order compelling IRS to produce various documents concerning three tax examinations

conducted by the agency.  Compl. ¶¶ 5–7.  One of the documents requested is a 63-page Appeals

Case Memorandum, created in relation to IRS's examination of Zimmer's filings for the 2008-

2009 tax period.  Compl. ¶ 5.  Defendant partially denied Zimmer's request for this document; of

the memorandum's 63 pages, IRS disclosed 35 pages in full and redacted portions of the remaining

28 pages pursuant to FOIA Exemption 5.  Compl. ¶¶ 17–20.  While the remainder of the FOIA

action is still ongoing, plaintiff has filed a motion for partial summary judgment objecting to the

redactions in this one document and seeking the disclosure of the Appeals Case Memorandum in

its entirety.  *See* Pl.'s Mot. for Partial Summ. J. [Dkt. # 18].

Because the Appeals Case Memorandum was both deliberative and predecisional, and plaintiff does not meet its burden to establish express waiver of the deliberative process privilege, the Court will **GRANT** IRS's cross-motion for partial summary judgment and **DENY** plaintiff's motion.

## BACKGROUND

Plaintiff Zimmer was the subject of an examination (i.e., an audit) conducted by defendant IRS covering Zimmer's 2008-2009 tax years.  Compl. ¶ 5; Def.'s Opp. to Pl.'s Partial Mot. for Summ. J. [Dkt. # 25] ("Def.'s Opp.") at 6.  At the conclusion of the audit, IRS's examination team proposed seven adjustments to plaintiff's tax liabilities, outlined in a Schedule of Adjustments.  *See* Mem. in Supp. of Pl.'s Mot. for Partial Summ. J. [Dkt. # 18-1] ("Pl.'s Mot.") at 2; Att. 3 to Ex. 1 to Pl.'s Opp. to Cross-Mot. [Dkt. # 27-3] ("Redacted ACM") at 4.  Three of the issues listed in the Schedule of Adjustments were computational in nature and involved the IRC 199 deduction, Foreign Tax Credit, and a General Business Credit.  Redacted ACM at 4.  The four remaining "significant" issues involved (1) a Cost Sharing Arrangement (CSA)/Buy-In Payment, (2) an accuracy-related penalty related to Issue 1, (3) Quarterly/Annual CSA Payments, and (4) a Research & Experimental (R&E) Credit.  *Id.* at 4–5.

Of those four, Issues 1 and 2 were the most significant.  *See* Redacted ACM at 2, 5.  With respect to Issue 1, the IRS examination team concluded plaintiff should be "deemed to receive (or pay)" approximately $1.259 billion in a CSA buy-in payment from a subsidiary.  *See* Redacted ACM at 2, 8.  With respect to Issue 2, the IRS examination team imposed an approximately $174 million "Accuracy Related Penalty" due to plaintiff's failure to report the CSA buy-in payment correctly.  *Id.*

Plaintiff appealed the proposed adjustments through the IRS's Independent Office of Appeals ("IRS Appeals").  *See* Pl.'s Mot. at 2.  As a result of the appeals process, the parties entered into a Closing Agreement on October 18, 2017, which covered a portion of the issues related to plaintiffs 2008-2009 tax liability.[1]  Pl.'s Mot. at 7; Def.'s Opp. at 1.  Notably, the IRS Appeals team conceded Issues 1 and 2 in favor of plaintiff in full, adjusting those figures to zero as part of the agreement.  *See* Redacted ACM at 2.  The Appeals team also adjusted the R&E Credit.  *See id.*  However, three issues related to plaintiff's 2008-2009 tax liability remained unsettled.  Def.'s Reply in Supp. of Cross-Mot. [Dkt. # 29] ("Def.'s Reply") at 10.

An Appeals Case Memoranda ("ACM") was created in relation to Zimmer's appeal and was finalized on December 3, 2018.[2]  Def.'s Opp. at 6.  Four days later, on December 7, 2018, defendant sent a letter to plaintiff stating that IRS Appeals had approved the Closing Agreement reached on October 18, 2017.  Letter from Roxanne M. Sharp Rodjius, Appeals Team Case Leader, Internal Revenue Service, to Mark Bilodeau, Director of U.S. Income Tax Defense, Zimmer Biomet Holdings, Inc. (Dec. 7, 2018), Att. 2 to Ex. 1 to Pl.'s Opp. to Cross-Mot. [Dkt. # 27-2] ("Settlement Letter") at 1.  Defendant then issued a Statutory Notice of Deficiency on December 21, 2018.  *See* Def.'s Cross-Mot. for Partial Summ. J. [Dkt. # 26] ("Def.'s Cross-Mot.") at 11; Aff. of Mark Bilodeau, Ex. 1 to Pl.'s Partial Mot. for Summ. J. [Dkt. # 18-3] ("Bilodeau Aff.") ¶ 8.

---

1    The Internal Revenue Code provides that "[t]he Secretary is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal revenue tax for any taxable period."  26 U.S.C. § 7121.

2    An ACM "[a]ddress[es] the taxpayer's position, the government's position, and Appeals' analysis and final determination."  IRM 8.6.2.2(8) (Aug. 17, 2017).  The ACM is an Appeals Technical Employee's "summary of the issue(s) and recommended resolution."  IRM. 8.6.2.2 (Mar. 16, 2015).

The Notice reflected the IRS' position on the remaining disputed issues related to plaintiff's 2008-2009 tax liabilities.  Bilodeau Aff. ¶ 9.

On March 17, 2020, the parties participated in a telephone conference to discuss separate ongoing audits for plaintiff's 2010-2012 and 2013-2015 tax periods.  Compl. ¶ 9.  According to plaintiff, IRS team members stated that the examination team "relied on the contents of the 2008-2009 [ACM] to reach conclusions with respect to a transfer pricing issue in the 2010-2012 taxable years."  Compl. ¶ 10.  A member of the examination team allegedly stated her belief that plaintiff had received a copy of the ACM.  Compl. ¶ 12.  Plaintiff requested a copy that day, but upon receiving no response, plaintiff submitted a FOIA request on April 24, 2020.  Compl. ¶¶ 13–14.

In the request, counsel for plaintiff sought the following:

> The final Appeals Case Memorandum (ACM) prepared in connection with the 2008 and 2009 taxable years. The ACM is described in IRM 8.6.2.2 (08-17-2017) and 8.7.11.14 (10-26-2007). The request for the ACM includes but is not limited to all narrative sections, attachments, forms, schedules of adjustment, and any other attachments to the ACM.

Compl. ¶ 14.

Defendant responded to plaintiff's FOIA request on August 28, 2020, disclosing 35 pages in full and 28 pages in part.  Compl. ¶¶ 17–18.  Defendant invoked the deliberative process privilege under FOIA Exemption 5 to justify its withholding of the material.  Compl. ¶ 20.  On November 25, 2020, plaintiff agency appealed the decision to withhold the redacted material, but its appeal was denied.  Compl. ¶¶ 21, 24.  This litigation followed to compel production of that document, among others.

Although document production for other portions of plaintiff's FOIA requests remains ongoing, *see, e.g.*, Min. Order (June 21, 2024), plaintiff has filed a motion for partial summary judgment to resolve the dispute surrounding the ACM.  It argues that the deliberative process

privilege codified in Exemption 5 does not apply, and even if it did, the defendant waived the privilege in the March 17, 2020 phone call. *See* Pl.'s Mot. at 1. Defendant has opposed plaintiff's motion and filed its own cross-motion for summary judgment, arguing the redactions were proper pursuant not only to Exemption 5, but also Exemption 3.[3] *See* Def.'s Opp. at 2. Plaintiff has opposed defendant's cross-motion, and the matter is fully briefed. *See* Pl.'s Opp. to Def.'s Cross-Mot. for Partial Summ. J. [Dkt. # 27] ("Pl.'s Opp. to Cross-Mot."); Def.'s Reply.

On February 9, 2024, the Court ordered defendant to provide a copy of the ACM without redactions to assist the Court in making a responsible *de novo* determination, *see* Min. Order (Feb. 9, 2024), and the Court has reviewed the document *in camera*.

## STANDARD OF REVIEW

In a FOIA case, the district court reviews the agency's decisions *de novo* and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

3    Defendant's asserts Exemption 3 "only for two redactions on the very first page of the 2008-2009 ACM." Def.'s Cross-Mot. at 5 n.2. Defendant at times also asserts Exemption 7, *see* Def.'s Cross-Mot. at 5, but in its most recent reply states "[it] has not invoked [Exemption] 7(E) here." Def.'s Reply at 7. For the purposes of this opinion, this Court will consider only defendant's invocations of Exemptions 3 and 5.

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable factfinder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In the FOIA context, "the sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" in order for summary judgment to be inappropriate. *Weisberg v. U.S. Dep't of Just.*, 627 F.2d 365, 371 n.54 (D.C. Cir. 1980), quoting *Founding Church of Scientology v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979) (internal quotation marks omitted). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

"Summary judgment may be granted on the basis of agency affidavits" in FOIA cases when those affidavits "contain reasonable specificity of detail rather than merely conclusory statements," and when "they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013), quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006). However, a plaintiff cannot rebut the good faith presumption afforded to an agency's supporting affidavits through "purely speculative claims about the existence and discoverability of other documents."

6

*SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

## ANALYSIS

FOIA requires the release of government records upon request. Its purpose is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). At the same time, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific Exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Just.*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."), citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). The Supreme Court has instructed that "FOIA Exemptions are to be narrowly construed." *Abramson*, 456 U.S. at 630.

To prevail in a FOIA action, an agency must first demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." [4] *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Second, the agency must show that "materials that are withheld . . . fall within a FOIA statutory Exemption." *Leadership Conf. on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005). Any "reasonably segregable" information in a responsive record must be

---

[4] Because plaintiff has filed only a partial motion for summary judgment with respect to a single document and production remains ongoing, threshold issues that ordinarily must be determined in a FOIA case – such as the adequacy of defendant's search for responsive records – are not yet ripe, have not been briefed, and will not be addressed in this opinion.

released, 5 U.S.C. § 552(b), and "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Ctr., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

In 2016, Congress added language to FOIA, mandating that "an agency shall withhold information under this section only if the agency reasonably foresees that disclosure would harm an interest protected by [the] Exemption. . . . or disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). As the D.C. Circuit has explained, "Congress added the distinct foreseeable harm requirement to foreclose the withholding of material unless the agency can 'articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld.'" *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021), quoting H.R. Rep. No. 114-391, at 9 (2016). "In that way, the foreseeable harm requirement imposes an independent and meaningful burden on agencies." *Id.* (brackets and internal quotation marks omitted).

## I.   Defendant's Assertion of Exemption 5 Was Appropriate.

Exemption 5 permits agencies to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5); *Dep't of Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). A document may be properly withheld under Exemption 5 only if (1) its source is a government agency, and (2) it falls "within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Klamath*, 532 U.S. at 8. The Exemption encompasses "protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context," including the executive "deliberative process" privilege. *Tax'n with Representation Fund v. IRS*,

646 F.2d 666, 676 (D.C. Cir. 1981).   FOIA "places the burden on the agency to sustain the lawfulness of specific withholdings in litigation."   *Nat. Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000).

"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government."   *Klamath*, 532 U.S. at 8–9 (citations omitted), quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975).   To accomplish that goal, "[t]he deliberative process privilege protects agency documents that are both predecisional and deliberative."   *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006), citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

Whether a document is predecisional "turns centrally on whether agency communications precede a final decision," whereas the deliberative prong "focuses on whether the substance of the documents 'reflects the give-and-take of the consultative process.'"   *Campaign Legal Ctr. v. Dep't of Justice*, 34 F.4th 14, 23 (D.C. Cir. 2022), quoting *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 362 (D.C. Cir. 2021).   Moreover, to satisfy the deliberative prong, the government must "explain the role it played in administrative decisionmaking – the 'who, what, where, and how' of internal governmental deliberations."   *Id.*, quoting *Judicial Watch, Inc. v. U.S. Dep't of Just.*, 20 F.4th 49, 57 (D.C. Cir. 2021).   To meet that burden, the government must demonstrate 1) the "roles of the document drafters and recipients," 2) the "nature of the withheld content," 3) the "stage within the broader deliberative process in which the withheld material

operates," and 4) the "way in which the withheld material facilitated agency deliberation." *Id.*; *Judicial Watch*, 20 F.4th at 56.[5]

However, if a record falls within the coverage of the deliberative process privilege, that privilege can be waived if "an agency chooses expressly to adopt or incorporate by reference an intra-agency memorandum previously covered by Exemption 5 in what would otherwise be a final opinion." *Sears, Roebuck & Co.*, 421 U.S. at 134; *see also Judicial Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017); *Afshar v. Dep't of State*, 702 F.2d 1125, 1142 (D.C. Cir. 1983). "[V]ague or equivocal statements implying that a position presented in a deliberative document has merit" are not enough to constitute a waiver of Exemption 5. *Judicial Watch*, 847 F.3d at 739.

### A. The 2008-2009 ACM was predecisional.

Plaintiff argues that Exemption 5 does not apply because the ACM postdates the October 18, 2017 Closing Agreement, which the parties entered into more than one year before the ACM was finalized on December 3, 2018. Pl.'s Mot. at 5, 7. According to plaintiff, because the Closing Agreement reflects the "final and conclusive" view of the dispute over plaintiff's 2008-2009 tax liability, the ACM was necessarily post-decisional. *Id.* at 5.

---

5    In *Tax Analysis v. I.R.S.*, the D.C. Circuit held that Field Service Advice Memoranda ("FSAs") were not protected by Exemption 5. 117 F.3d 607, 611-18 (D.C. Cir. 1997). However, FSAs are "issued by the Office of Chief Counsel for the IRS . . . and provide[] legal advice to the IRS, direct[] litigation in the Tax Court, and provide[] guidance and support for litigation in other courts." *Id.* at 608. FSAs thus represent "statements of a legal position" from the Chief Counsel to subordinates in the field. *Id.* at 617. ACMs, on the other hand, contain recommendations from IRS personnel to superiors regarding resolutions of specific tax disputes. *See* IRM. 8.6.2.2.4 (08-17-2017).

Defendant disagrees.  It points to a letter from IRS Appeals Case Team Leader Roxanne Sharp Rodjius to plaintiff dated December 7, 2018 – four days after the ACM was finalized – notifying Zimmer that IRS Appeals approved the settlement.  Def.'s Cross-Mot. at 11; Decl. of Joy Gerdy Zogby, Ex. 2 to Def.'s Cross-Mot. for Partial Summ. J. [Dkt. # 26-2] ("Zogby Decl.") ¶ 30; *see also* Settlement Letter at 1.   Defendant contends that the approval of the settlement by IRS Appeals was "based at least in part" upon the content of the ACM, and, therefore, that the document preceded the relevant decision.  Def.'s Cross-Mot. at 17; Zogby Decl. ¶ 31.  Plaintiff replies that the December 7, 2018 letter was not referring to the Closing Agreement, but rather is "the acceptance of the settlement of a computational amount set forth in the offer of settlement attached to that letter."  Pl.'s Opp. to Cross-Mot. at 37.

A review of the parties' affidavits and exhibits reveals that there is no genuine dispute of fact with respect to this issue.  It is undisputed that the parties entered into a Closing Agreement in October 2017.  However, subsequent actions taken by IRS Appeals reveal that while the Closing Agreement may have resolved some aspects of plaintiff's 2008-2009 tax liability, it did not resolve others. More importantly, based on the sworn affidavit submitted by IRS Attorney Joy Gerdy Zogby, the creation of an ACM was a necessary predicate to the agency's approval of those aspects that were part of the settlement.  *See* Zogby Decl. ¶ 31.

As IRS points out, plaintiff was notified via letter on December 7, 2018, that the parties' settlement was approved.  That letter begins, "Appeals approved the settlement we reached and we will process and close your case."  Settlement Letter at 1.  Defendant attached to the letter a Form 870-AD, an IRS form entitled "Offer to Waive Restrictions on Assessment and Collection of Tax Deficiency and to Accept Overassessment."   Settlement Letter at 2.  In the relevant part, the Form states:

> This offer, when accepted by the Commissioner of Internal Revenue, will result in the waiver of restrictions on assessment and collection of the deficiency for 2009-09 set forth above, which deficiency is attributable to the resolution of specific issues enumerated in this Form 870-AD and the Appeals Audit Statement . . . dated March 20, 2018 and the Closing Agreement signed on behalf of the Taxpayer and Commissioner on October 18, 2017, and October 19, 2017, respectively ("Closing Agreement") (the "Resolved Items").

*Id.* That form was signed on December 3, 2018, on behalf of the Commissioner of the IRS by the Case Team Leader who oversaw the creation of the ACM. *Id.*

Following the approval of the settlement, IRS issued a Statutory Notice of Deficiency on December 21, 2018 – seventeen days after the ACM was finalized – that covered the remaining issues not addressed in the Closing Agreement. *See* Def.'s Cross-Mot. at 17, citing Zogby Decl. ¶ 33. The filing of this document enabled plaintiff to pursue litigation against defendant in the tax courts, and plaintiff's 2008-2009 tax liability did not reach a full and final resolution until November 2021, nearly three years after the ACM was finalized. Def.'s Cross-Mot. at 11–12; Bilodeau Aff. ¶ 9.

The language of the December 7, 2018 letter and the attached Form 870-AD, followed by the filing of a Statutory Notice of deficiency two weeks later, support defendant's contention that IRS Appeals' approval of the settlement came *after* the ACM was finalized on December 3, 2018,

rather than before.  The creation of the ACM thus "precede[d] a final decision" on plaintiff's 2008-2009 tax liability and was, therefore, predecisional.[6]  *Campaign Legal Ctr.*, 34 F.4th at 23.

**B.      The 2008-2009 ACM was deliberative.**

As indicated above, *supra* at 9–10, when the government invokes Exemption 5 to shield documents from FOIA disclosure, it bears the burden of demonstrating 1) the "roles of the document drafters and recipients," 2) the "nature of the withheld content," 3) the "stage within the broader deliberative process in which the withheld material operates," and 4) the "way in which the withheld material facilitated agency deliberation."  *Campaign Legal Ctr.*, 34 F.4th at 23. Defendant has met this burden with this declaration and supporting documents.

The 2008-2009 ACM was drafted by members of the IRS Appeals team and relayed those team members' personal views regarding plaintiff's tax liability, including the relative pros and cons of various tax adjustments and potential litigation hazards associated with those adjustments. *See* Zogby Decl., ¶¶ 17, 25–27.  It was compiled and submitted from a subordinate, Appeals Case Team Leader Roxanne Sharp Rodjius, to her superior, Appeals Team Manager Clarence H. Phillips, for the purpose of recommending or not recommending the settlement of various tax

---

6      Even if the ACM did not predate the final IRS Appeals approval, defendant correctly notes that courts in this District have found that predecisional records are not limited to those created before a final decision is made, and that the court's task depends on the context of the record relative to the agency's decision.  *See, e.g.*, *Khatchadourian v. Def. Intel. Agency*, 453 F. Supp. 3d 54, 91 (D.D.C. 2020); *Conservation Force v. Jewell*, 66 F. Supp. 3d 46, 61 (D.D.C. 2014), *aff'd*, No. 15-5131, 2015 WL 9309920 (D.C. Cir. 2015); *Sierra Club v. U.S. Dep't of Interior*, 384 F. Supp. 2d 1, 16 (D.D.C. 2004).

disputes.[7]   Zogby Decl. ¶¶ 19–20, 28.   And, as described above, the ACM was a necessary predicate to the ultimate settlement of plaintiff's 2008-2009 tax dispute.   *Supra* at 12–13. Moreover, the Court conducted an *in camera* review to assist in its responsible decisionmaking, and the redacted portions of the ACM do, in fact, involve IRS Appeals Team members' personal opinions and recommendations related to plaintiff's tax adjustments.

   In sum, the 2008-2009 ACM represents recommendations from subordinates to their Appeals Team Manager – the very "core" of deliberative materials.   *Reporters Comm.,* 3 F.4th at 364.

   **C.     Defendant has demonstrated foreseeable harm.**

   Plaintiff also contends defendant has not met its burden of showing that disclosure would cause foreseeable harm pursuant to 5 U.S.C. § 552(a)(8)(A)(i).   *See* Pl.'s Opp. to Cross-Mot. at 40.   Defendant argues disclosure "chill[s] future deliberations by both IRS Examination and IRS Appeals employees because there would be a risk that their opinions, views, and analysis would become public."   Def.'s Cross-Mot. at 21.   According to IRS attorney Gerdy Zogby, "[i]f a document like the ACM were made fully available to taxpayers, IRS Appeals teams would be less able to engage in open and honest discussions about how to fulfill their mission of resolving cases." Zogby Decl. ¶ 50.

   The D.C. Circuit addressed this issue in *Coastal States*.   There, the Circuit held that disclosure of a document is likely to adversely affect the purposes of Exemption 5 when the

---

7     Plaintiff argues that Appeals Case Team Leader Rodjius had authority to settle cases, and thus the implication that Rodjius was making a recommendation to her superior is false. Pl.'s Opp. to Cross-Mot. at 30.   However, the first page of plaintiff's attachment displays Rodjius' signature, and, below that, a box labeled "Approved by" along with the digital signature of her supervisor, Phillips. Att. 3 to Ex. 1 to Pl.'s Opp. to Cross-Mot. [Dkt. # 27-2] at 1.

document is "so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency." *Coastal States*, 617 F.2d at 866.

The Court agrees with defendant.  Here, as defendant points out, the ACM is a particularly sensitive intra-agency document given that it "reflect[s] a marked difference of opinion between IRS Exam and IRS Appeals regarding the proper amount of Plaintiff's tax liabilities."  Def.'s Reply at 18.  Documents like the ACM at issue – which contains discussion among employees "so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency," *Coastal States*, 617 F.2d at 866 – are squarely the concern of the deliberative process privilege, and the Court finds that defendant has sufficiently demonstrated that disclosure would cause harm to internal functioning.

**D.    Defendant did not waive the deliberative process privilege.**

Finally, plaintiff argues that defendant waived any application of the deliberative process privilege under Exemption 5.  It points to a March 17, 2020, teleconference during which a member of the IRS examination team allegedly "affirmatively stated . . . that she had relied upon the contents of the 2008-2009 ACM to prepare a write-up of issues" for a subsequent examination. Pl.'s Mot. at 10; Bilodeau Aff. ¶ 11; Aff. of William F. Colgin, Ex. 2 to Pl.'s Partial Mot. for Summ. J. [Dkt. # 18-4] ("Colgin Aff.") at 7.  Defendant disputes that plaintiff's affidavits actually support the manner in which plaintiff characterizes the teleconference call in its memorandum of support.  Def.'s Reply at 21.  However, even assuming *arguendo* that the IRS examination team did make the comments as plaintiff alleges, those comments are insufficient to demonstrate defendant waived its deliberative process privilege.

The Circuit addressed this question in *Common Cause v. IRS,* 646 F.2d 656, 660 (D.C. Cir. 1981).  There, the plaintiff filed a FOIA request to compel the IRS to produce internal documents

related to the agency's decision not to implement a public disclosure policy.  *Id.* at 657.  The plaintiff argued, in part, that the IRS relinquished deliberative process protection when the agency published a post-decision document referring to the reasons discussed in the privileged memoranda.  *Id.* at 660.  The Circuit held that "[s]uch casual allusion in a post-decisional document to subject matter discussed in some pre-decisional, intra-agency memoranda is not the express adoption or incorporation by reference [that] . . . would remove the protection of Exemption 5 if the memorandum were the agency's final opinion.'"  *Id.* (internal quotation marks omitted).

The same principle can be applied here.  According to plaintiff, the IRS employee on the teleconference call did not "adopt" the contents of the ACM, but rather stated that she used the ACM "to understand and develop the examination team's position" on issues relating to a subsequent tax period.  Bilodeau Aff. ¶ 11; *see* Def.'s Cross-Mot. at 22.  This type of affirmative comment falls short of the "express[]" adoption required by *Sears*.  421 U.S. at 161.  Rather, an oral acknowledgement that the Appeals Team relied on the contents of the ACM during a teleconference meeting simply reaffirms its pre-decisional nature and falls squarely within the category of "casual allusion[s]" insufficient to constitute waiver.  *Common Cause*, 646 F.2d at 660.  Moreover, it is far from clear which portions of the ACM the IRS employee was referring to.  *See* Bilodeau Aff. ¶ 11; Def.'s Cross-Mot. at 22; Colgin Aff. ¶ 7.  Ambiguity of this type further supports the conclusion that the alleged statement falls well short of the express adoption standard set by *Sears*.  421 U.S. at 161.

Therefore, even accepting plaintiff's description of the conversation as true, defendant IRS's comments on the March 17, 2020 teleconference are insufficient to constitute a waiver of the deliberate process privilege.[8]

## II.    Segregability

"Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (collecting cases). An agency must release "[a]ny reasonably segregable portion of a record," 5 U.S.C. § 552(b), unless the non-exempt portions are "inextricably intertwined with exempt portions" of the record. *Mead Data Ctr.*, 566 F.2d at 260; *see also Johnson v. Exec. Office for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002). "In order to demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability," although "the agency is not required to provide so much detail that the exempt material would be effectively disclosed." *Johnson*, 310 F.3d at 776, citing *Mead Data Ctr.*, 566 F.2d at 261.

Just as with the exemption analysis, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," *Sussman*, 494 F.3d at 1117, citing *Boyd v. Crim. Div. of U.S. Dep't of Just.*, 475 F.3d 381, 391 (D.C. Cir. 2007), and "[a]

---

[8]    Defendant additionally invokes FOIA Exemption 3, which authorizes agencies to withhold information that is "specifically exempted from disclosure by statute," 5 U.S.C. § 552(b)(3), to justify its withholdings. Def.'s Cross-Mot. at 2. It points to § 6103(e)(7) of the Internal Revenue Code, which provides that "return information" may only be inspected or disclosed if the information would not "seriously impair Federal tax administration." 26 U.S.C. § 6103(e)(7).

The redactions for which defendant relies on Exemption 3 are co-extensive with those for which it relies on Exemption 5, except for three unchallenged, minor redactions appearing on the first page of the ACM. Therefore, because that the Court finds the challenged redactions covered by Exemption 5, it need not address defendant's additional argument concerning Exemption 3.

court may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. U.S. Dep't of Just.*, 518 F.3d 54, 61 (D.C. Cir. 2008), citing *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996). A district court must make an express finding on segregability. *Juarez*, 518 F.3d at 60, citing *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007).

Plaintiff argues that defendant has failed to meet its segregability obligation because the IRS affidavit supporting its cross-motion for summary judgment "fails to provide [the] Court with sufficient information" to make a specific finding on segregability. Pl.'s Opp. at 33. It points to a single statement offered in the affidavit, which reads in full:

> To the extent that any factual or non-privileged material is being withheld, I believe it is so intertwined with the material protected by Exemption 5 deliberative process that such additional material cannot be released without releasing material protected by deliberative process.

Zogby Decl. ¶ 44.

The Court agrees with plaintiff that, in the abstract, such a conclusory statement, without more, would not enable the Court to make the necessary factual findings regarding segregability. IRS has nevertheless provided an index that describes the nature of and rationale for the relevant withholdings, *see* Zogby Decl. ¶ 17, and the Court has had the opportunity to review the ACM *in camera*. Considering defendant's averments and descriptions in its declaration, and the Court's subsequent confirmation of those descriptions, the Court is satisfied that the agency has met its segregability requirement. The Court will therefore grant defendant's motion for summary judgment on the issue of segregability.

## CONCLUSION

For the foregoing reasons, the Court finds that defendant properly withheld the redacted material in the ACM pursuant to FOIA Exemption 5. Defendant's partial cross-motion for

summary judgment [Dkt. # 26] will therefore be **GRANTED** and plaintiff's partial motion for summary judgment [Dkt. # 18] will be **DENIED**.

       **SO ORDERED.**

AMY BERMAN JACKSON
United States District Judge

DATE:  September 26, 2024